MAXIMOV, TRUSTEE, *v.* UNITED STATES.

No. 240. Argued March 28, 1963.—Decided April 29, 1963.

*David A. Lindsay* argued the cause for petitioner. With him on the briefs were *D. Nelson Adams, John A. Reed* and *John A. Corry.*

*Louis F. Claiborne* argued the cause for the United States. With him on the brief were *Solicitor General Cox, Assistant Attorney General Oberdorfer, Meyer Rothwacks.* and *Harold C. Wilkenfeld.*

MR. JUSTICE GOLDBERG delivered the opinion of the Court.

The question in this case is whether an American trust whose beneficiaries are British subjects and residents and which retains capital gains income realized in this country is exempt from federal income tax on such gains by virtue of a provision of the Income Tax Convention between the United States of America and the United Kingdom, April 16, 1945, 60 Stat. 1377, 1384, which exempts capital gains of a "resident of the United Kingdom." Certiorari was granted, 371 U. S. 810, to resolve

a conflict between the decision of the Court of Appeals for the Second Circuit, 299 F. 2d 565, denying the exemption to the domestic trust, the petitioner in this case, and the decision of the Court of Appeals for the Ninth Circuit in *American Trust Co.* v. *Smyth,* 247 F. 2d 149, granting the exemption to a domestic trust under similar circumstances.

## I.

The petitioner, represented here by its successor trustee, Maximov, a citizen and resident of the United States, is a private trust created under Connecticut law in 1947 by an *inter vivos* deed executed by the grantor, a resident and citizen of the United Kingdom. A lifetime interest in trust income was retained by the grantor, his wife was named contingent successor income beneficiary for her life, and their children were designated as contingent remaindermen. All of the beneficiaries were citizens and residents of the United Kingdom at the times here relevant.

The trust, which is administered in the United States, realized capital gains income upon the sale of certain of its assets during 1954 and 1955. In accordance with controlling Connecticut law, which the trust instrument expressly makes applicable, these gains were treated as accretions to corpus and were not distributed. Pursuant to United States income tax provisions applicable to trusts in general, the gains were reported as part of the trust's income on federal fiduciary tax returns filed by the trustee for the years in question and the appropriate amount of tax paid thereon.

Asserting exemption from United States tax under the Convention, the trustee filed claims for refund which were disallowed by the Internal Revenue Service. The trustee then brought this suit in the Federal District Court seek-

ing recovery of the tax attributable to the capital gains. Motions for summary judgment were filed both by the petitioner and by the Government. The District Court denied the Government's motion and entered judgment for the petitioner in the full amount of the tax, holding, upon the authority of the *Smyth* case, *supra*, that the petitioner was entitled to exemption under the treaty. The Court of Appeals for the Second Circuit reversed and denied the petitioner's claim of exemption under the Convention. In so doing, the Second Circuit expressly rejected the reasoning adopted, and result reached, by the Ninth Circuit in *Smyth.*

We conclude that the interpretation of the relevant provisions of the Convention adopted by the Second Circuit in this case is the one more consonant with its language, purpose and intent. Accordingly, we affirm the judgment of the Court of Appeals below, denying the exemption.

## II.

Under United States tax laws, a trust, like the petitioner trust, is treated as a separate taxable entity, apart from its beneficiaries. §§ 641, 7701 (a)(1), (14), Int. Rev. Code of 1954. And, under appropriate provisions of the Internal Revenue Code, trust income neither distributed nor otherwise taxable directly to the beneficiaries is taxable to the trust entity. See §§ 641–668, Int. Rev. Code of 1954. Under these statutory concepts of taxability, the gains here in question are properly includable in, and taxable as, gross income of the petitioner. Whatever basis there may be, therefore, for relieving the trust from tax must be found in the words or implications of the Convention.

In asserting freedom from liability for United States income tax on its realized and retained capital gains, the

52

petitioner trust relies on Article XIV of the Convention, which provides:

"A resident of the United Kingdom not engaged in trade or business in the United States shall be exempt from United States tax on gains from the sale or exchange of capital assets."

The petitioner itself is a United States trust established in this country, governed by the laws of one of our States and administered here by an American trustee. It is plainly not a "resident of the United Kingdom," the class to which exemption under Article XIV is expressly limited. It argues, however, that the purposes and objectives of the treaty require that we disregard its identity as a separate taxable entity and measure the application of the exemptive provision by the economic impact of the tax which would otherwise be imposed. The petitioner thus says that since the real burden of the tax falls upon its beneficiaries, all of whom are residents of the United Kingdom and objects of the treaty protections, the treaty should be read as exempting the trust from the tax asserted by the United States. Mindful that it is a treaty we are construing, and giving the Convention all proper effect, we cannot, and do not, either read its language or conceive its purpose as encompassing, much less compelling, so significant a deviation from normal word use or domestic tax concepts.

The plain language of the Convention does not afford any support to the petitioner's argument in favor of disregarding the trust entity. In fact, the very words of the treaty impel a contrary reading. The exemption provided by Article XIV applies in terms only to a "resident of the United Kingdom" and Article II (1)(g) defines such a resident as "any person (other than a citizen of the United States or a United States corporation) who is resident in the United Kingdom for the purposes of

United Kingdom tax and not resident in the United States: for the purposes of United States tax." The word "person" is not defined in the treaty and we are referred by Article II (3) of the Convention, therefore, to the domestic tax law of the country applying the treaty, in this case the United States, to determine its meaning.[1] Under United States tax law, and apparently under British law as well, the term "person" includes a trust. Int. Rev. Code of 1954, § 7701 (a)(1); see Harvard Law School, World Tax Series, Taxation in the United Kingdom, ¶ 5/3.4, p. 127 (1957). Thus, it appears quite clearly that, within the meaning of the Convention, the petitioner trust is a separate "person" and distinct tax entity, apart from its beneficiaries. Since the petitioner meets neither of the definitional tests of the treaty—it is not resident in the United Kingdom for purposes of that signatory's tax and is a resident in the United States for purposes of this country's tax—it plainly is not a "resident of the United Kingdom" exempted from United States tax by the Convention.

Apparently recognizing the impediments of the language of the exemptive provision interpreted in accordance with its terms and pursuant to the standards set out in the treaty itself, the petitioner asserts that equality of tax treatment was the objective of the treaty and that furtherance of this objective compels adoption of its theory that exemption must be accorded whenever the burden of the tax would diminish such equality. Since, in general terms at least, the United Kingdom imposes no

---

[1] Article II (3) of the Convention provides:

"In the application of the provisions of the present Convention by one of the Contracting Parties any term not otherwise defined shall, unless the context otherwise requires, have the meaning which it has under the laws of that Contracting Party relating to the taxes which are the subject of the present Convention."

tax on capital gains, says the petitioner, no similar tax should be imposed by the United States here.

The immediate and compelling answer to this contention is that, as already noted, the language of the Convention itself not only fails to support the petitioner's view, but is contrary to it. Moreover, it is particularly inappropriate for a court to sanction a deviation from the clear import of a solemn treaty between this Nation and a foreign sovereign, when, as here, there is no indication that application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories. It appears from the relevant materials instructive as to the intent of the parties to the Convention that the general purpose of the treaty was not to assure complete and strict equality of tax treatment—a virtually impossible task in light of the different tax structures of the two nations—but rather, as appears from the preamble to the Convention itself, to facilitate commercial exchange through elimination of double taxation resulting from both countries levying on the same transaction or profit; an additional purpose was the prevention of fiscal evasion.[2] Certainly, neither of these purposes requires the granting of relief in the situation here presented. There is concededly no imposition of a double tax on the gains of the petitioner, since neither it nor its beneficiaries are taxed thereon under United Kingdom law. See Harvard Law School, World Tax Series, Taxation in the United Kingdom, ¶¶ 9/8.1, 10/7.2, pp. 277, 307–308.

---

[2] The preamble recites that the parties desired "to conclude a Convention for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income." See also Hearings before a Subcommittee of the Committee on Foreign Relations, on Conventions With Great Britain and Northern Ireland Respecting Income and Estate Taxes, S. Exec. Docs. D and E, 79th Cong., 1st Sess. 1–2.

Moreover, no impairment of, or obstacle to, trade or commercial intercourse is threatened in the context of this case, and considerations of fiscal evasion are not here involved.

Even to the extent that one purpose of the Convention was to secure a measure of equality of tax treatment, it is apparent from the face of the treaty itself that no invariable or inflexible equality was sought or intended. In fact, the treaty creates some inequalities of treatment. For example, the very exemption provided by Article XIV., on which the petitioner relies, is limited in its application to United Kingdom residents who are not "engaged in trade or business in the United States." Thus, not even all United Kingdom residents are immune from capital gains taxation in this country, though United States residents doing business or conducting a trade in the United Kingdom would receive the full benefit of the absence of a general capital gains tax there. It appears that the treaty did not represent an attempt to equalize all disparities in tax treatment between its signatories. To the extent that complete equality was intended, it was specifically provided. We cannot, in such a context, read the treaty to accord unintended benefits inconsistent with its words and not compellingly indicated by its implications.[3]

---

[3] Treatment of the petitioner trust as a taxable entity for purposes of construing the treaty exemption and imposition of liability for tax on its undistributed capital gains is not only mandated by the terms of the treaty itself, the apparent intention of its signatories, and the context· in which negotiated, but is consistent with long-standing administrative practice and regulations, see T. D. 5569, 1947–2 Cum. Bull. 100, § 7.519 (c), and with the administrative interpretation accorded many other United States tax conventions limiting such exemptions to items of income distributed or otherwise normally directly taxable to the trust beneficiaries. See, *e. g.*, Australia, T. D. 6108, 1954–2 Cum. Bull. 614, § 501.10; Belgium, T. D. 6160, 1956–1 Cum. Bull. 815, § 504.119; Switzerland, T. D. 6149, 1955–2 Cum. Bull. 814, § 509.121.

To say that we should give a broad and efficacious scope to a treaty does not mean that we must sweep within the Convention what are legally and traditionally recognized to be domestic taxpayers not clearly within its protections; we would not expect the United Kingdom to exempt similarly recognized British taxpayers not lucidly intended to be freed of its taxes.

This, of course, does not mean that the treaty fails to provide bilateral benefits to residents of both the United States and the United Kingdom. A resident of the United Kingdom realizing capital gains in this country is appropriately protected and exempt, and the Congress has adopted provisions fully implementing the operative dimensions of the treaty. The Internal Revenue Code contains sections designed to give effect to exemptions of this type and to assure consistency with tax treaty obligations in general. See, e. g., Int. Rev. Code of 1954, §§ 894, 7852 (d). Our interpretation affords every benefit negotiated for by the parties to the Convention on behalf of their respective residents and prevents an unintended tax windfall to a private party. The language and purposes of the treaty are amply served by adhering to its clear import limiting exemption to "residents of the United Kingdom" falling within the exemptive purview. The petitioner, a resident American trust, is properly subject to United States income tax on its retained capital gains. Accordingly, the judgment below is

*Affirmed.*