**NORSTAR BANK OF UPSTATE NEW YORK, formerly State Bank of Albany, as Trustee under Agreement with Mildred J. Ricoy, Deceased, Dated 3/28/79, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**No. 84–CV–1594.**

United States District Court, N.D. New York.

Oct. 7, 1986.

Pattison, Sampson, Ginsberg & Griffen, P.C., Troy, N.Y., for plaintiff; Edward H. Pattison, of counsel.

Frederick J. Scullin, Jr. U.S. Atty., George A. Yanthis, Asst. U.S. Atty., N.D. N.Y., Albany, N.Y.; United States Dept. of Justice, Terri E. Schapiro, Trial Atty., Tax Division, Washington, D.C., for defendant.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

On October 14, 1984, plaintiff Norstar Bank of Upstate New York ("Norstar") commenced this action pursuant to 28 U.S.C. § 1346(a)(1) (1982) to recover estate taxes claimed to have been illegally assessed and collected.[1] Subsequent to the commencement of this action, the parties agreed there were no genuine issues of material fact relating to the question of liability and entered into a stipulation to that effect. On the basis of the facts contained in that stipulation, both parties now move for summary judgment on the question of liability.[2] It is the opinion of this Court that the United States properly assessed and collected the taxes the plaintiff seeks to recover. Accordingly, the motion of the United States for summary judgment is granted.

---

1. Under 28 U.S.C. § 1346(a)(1) (1982), this Court has

   original jurisdiction, concurrent with the United States Claims Court, of:

   (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without au-

   thority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws; ...

2. The parties have agreed to attempt to resolve any computational issue concerning precise amounts due and owing without the intervention of the court.

## FACTS

Norstar is a New York bank which by an agreement dated March 28, 1979, became the trustee of certain assets of Mildred J. Ricoy located in Troy, New York. These assets were in the form of cash and securities. The trust agreement covering the assets provided, *inter alia*, that upon Ms. Ricoy's death, Norstar was to continue to hold the assets in further trust pursuant to the terms of the agreement. This agreement was in full force and effect on April 6, 1979, the date Ms. Ricoy died.

At the time of her death, Ms. Ricoy was a United States citizen domiciled in Paris, France. Pursuant to the Code Civile of France, she bequeathed her entire estate, which consisted of approximately $200,000 in real and personal property located in France, to her daughter, Renee Ricoy. Testamentary dispositions of realty and personalty situated in France by an individual residing in France at the time of death are subject to tax under the French "Droit de Succession". This tax on Ms. Ricoy's French assets was paid by Michael Bouvet and Associates, the French administrator of Ms. Ricoy's estate.

On or about June 13, 1980, Norstar filed a federal estate tax return on behalf of the estate of Ms. Ricoy.[3] Based on its interpretation of a tax treaty between the United States and France, which had been entered into on October 17, 1949, (the "Convention") Norstar did not include Ms. Ricoy's French realty and personalty in her gross estate. Thus, on or about August 12, 1980, Norstar paid an estate tax of $68,215.48. Norstar arrived at this amount by utilizing the provisions of the Internal Revenue Code and tax rates in effect on the date the Convention went into effect.

The Internal Revenue Service ("IRS") subsequently recalculated the estate tax due and owing from Norstar on the basis of the law and tax rates in effect in April, 1979, the time of Ms. Ricoy's death, and

determined that Norstar was entitled to a refund. However, IRS subsequently audited the estate tax return, discovered that Norstar had not included Ms. Ricoy's French assets in her gross estate, and recalculated the estate tax including Ms. Ricoy's French assets in her gross estate. On this basis, IRS determined there was due and owing from Norstar an additional $51,515.67 in estate tax. By May 20, 1983, Norstar paid this amount.

On or about February 6, 1984, Norstar filed a claim with IRS for a refund of estate taxes claimed to have been illegally assessed and collected. Six months later, when IRS had failed to act on Norstar's claim, this action was commenced seeking a refund on the same grounds asserted in the claim to IRS.

## DISCUSSION

In 1949, the United States and France entered into "a Convention for the avoidance of double taxation and the prevention of evasion in the case of taxes on estates and inheritances...." Convention for the Avoidance of Double Taxation and the Prevention of Evasion of Estate and Inheritance Taxes, October 18, 1946, United States-France, 64 Stat. B–5, B–6, T.I.A.S. No. 1982. The Convention provided two primary mechanisms for avoiding double taxation: a credit system and an exemption system.

Under Article 5 of the Convention, the United States and France agreed that under certain circumstances, the taxing nation would allow the taxpayer a credit for taxes paid in the other nation. Thus, the Convention provided:

The Contracting State imposing tax in the case of a deceased person who, at the time of his death, was domiciled in such State (or was a citizen thereof if such State is the United States), shall allow against its tax ... a credit for the amount of the tax imposed by the other

---

3. Norstar was obliged to pay estate taxes on behalf of Ms. Ricoy's estate by virtue of 26 U.S.C. § 6901(a)(1)(B) (1982) and 31 U.S.C. § 3713 (1982). Under these provisions, if Norstar failed to pay taxes on the assets in the trust fund, it would have been personally liable for those taxes.

Contracting State with respect to property situated in the territory of such other Contracting State and included for tax purposes by both States, but the amount of credit shall not exceed the portion of the tax imposed by the former State which is attributable to such property....

64 Stat. at B–11.

In lieu of a credit, Article 4 of the Convention provided that real and personal property of a decedent situated outside the territory of the taxing nation was exempt from taxation by that nation. Thus, Article 4 provided:

The Contracting State which imposes tax in the case of a decedent who, at the time of his death, was not domiciled in its territory but was domiciled in the territory of the other Contracting State:

\* \* \* \* \* \*

(b) shall ... take no account of property situated ... outside its territory in determining the amount or rate of tax....

64 Stat. at B–10. By its terms, however, Article 4 was not applicable *"to the tax imposed by the United States in the case of a deceased citizen of the United States." Id.* (emphasis added).

Nevertheless, at the time the Convention was entered into, the United States did not include *real* property of a decedent situated outside the United States in a decedent's gross estate under the Internal Revenue Code. At the time, the Code provided that "[t]he value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, *except real property situated outside of the United*

*States."* 26 U.S.C. § 811, Revenue Act of 1939 (emphasis added). In 1962, however, that provision was amended and the exemption for real property situated outside the United States was omitted. The statute then provided that "[t]he value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." 26 U.S.C. § 2031(a) (1982).

In the present case, Norstar argues that 26 U.S.C. § 2031 cannot apply to Ms. Ricoy's estate because it would result in her French realty being subject to double taxation contrary to the terms of the Convention.[4] In support of this argument, Norstar relies upon Article 1, section 3 of the Convention which provides:

The present Convention is concluded with reference to United States and French law in force on the day of its signature. Accordingly, if these laws are appreciably modified the competent authorities of the two States will consult together for the purposes of adapting the provisions of the present Convention to such changes.

64 Stat. at B–7. This provision, Norstar argues, incorporates the Internal Revenue Code as it existed on the date the Convention became effective as an integral part of the Convention. Therefore, any amendment to the Code that would result in tax consequences different from those that would have resulted under the Code and Convention on the date the Convention went into effect, would contravene the terms of the Convention and as such, would be ineffective by virtue of 26 U.S.C. § 7852(d) (1982).[5] After careful considera-

---

**4.** This argument may not be extended to Ms. Ricoy's personalty because under the predecessor to 26 U.S.C. 2031(a), personal assets of a decedent were treated in the same manner as they are now treated.

**5.** Under 26 U.S.C. § 7852(d), provisions of the Internal Revenue Code must not be applied when they conflict with "any treaty obligation of the United States." *Id.* It should be noted, however, that at the time 26 U.S.C. 2031(a) was

enacted, it was accompanied by a provision waiving the effect of 26 U.S.C. § 7852(d). *See* Revenue Act of October 16, 1962, § 31, Pub.L. No. 87–834, 76 Stat. 960, 1069, 1962 U.S.Code Cong. & Ad.News 1128, 1261. Because the Court has determined that there is no conflict between 26 U.S.C. § 2031 and the Convention, it finds it unnecessary to consider the effect in this case of the waiver provision enacted with 26 U.S.C. § 2031(a).

tion of this argument, the Court has determined that it is without merit.

■ When called upon to interpret a treaty, a court "should ... strive to 'give the specific words of a treaty a meaning consistent with the genuine shared expectations of the contracting parties.'" *Day v. TransWorld Airlines, Inc.,* 528 F.2d 31, 35 (2d Cir.1975), *cert. denied,* 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976) (quoting *Maximov v. United States,* 299 F.2d 565, 568 (2d Cir.1962), *aff'd,* 373 U.S. 49, 83 S.Ct. 1054, 10 L.Ed.2d 184 (1963)). Of course, a treaty, like a constitution, is a dynamic instrument, drafted to withstand changing conditions and expectations. *Id.* Thus, to the extent that a treaty can reasonably be interpreted to avoid conflict with a subsequent enactment, such an interpretation is to be preferred.[6] *See United States v. Manufacturers and Traders Trust Co.,* 703 F.2d 47, 53 (2d Cir.1983); *United States v. Vetco Inc.,* 691 F.2d 1281, 1286 (9th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981); *United States v. White,* 508 F.2d 453, 456 (8th Cir.1974).

■ Applying these principles in the case at bar, the Court concludes that 26 U.S.C. § 2031(a) does not conflict with the Convention merely because it causes different tax consequences for United States citizens owning realty abroad. On the contrary, the Convention is designed to incorporate amendments to the internal tax laws of France and the United States while still advancing its primary purpose. Under the former version of the statute, a United States citizen domiciled in France at the time of death, and owning realty in France at that time, would not have been required to include the French realty in their gross estate. Under the amended version of the statute, the realty must be included in the

estate, but under Article 5 of the Convention, the estate will receive a credit for any estate taxes paid on the realty in France. The mere fact that the benefit conferred on the taxpayer is different as a result of the amendment to 26 U.S.C. § 2031(a) is not, as Norstar argues, tantamount to a treaty violation. Thus, the statute does not violate the terms of the Convention and is applicable to Ms. Ricoy's estate.[7]

## CONCLUSION

In light of the foregoing, the United States' motion for summary judgment is granted and Norstar's cross-motion for summary judgment is denied. The parties are directed to report to the Court within ninety (90) days from the date of entry of this Order to inform the Court of the status of their negotiations to determine the precise amounts owed by Norstar to the United States.

IT IS SO ORDERED.

---

6. Nevertheless, when a conflict arises, 26 U.S.C. § 7852(d) generally requires that the statute give way in favor of the treaty.

7. In view of the Court's holding, Norstar's contention that the tax rates in effect at the time the Convention went into effect should be utilized to calculate the taxes on the estate is rejected. Also rejected is Norstar's argument that the words "wherever situated" in 26 U.S.C.

§ 2031(a) should be interpreted as referring only to property within the United States. The broader interpretation of those words endorsed by this Court does not, as Norstar maintains, give rise to a conflict with the Convention.