**The TAI PING INSURANCE CO. LTD. and Jetergar Ltd., Plaintiffs,**

v.

**NORTHWEST AIRLINES, INC. d/b/a Northwest Orient Cargo, Defendants.**

**No. 94 Civ. 0851 (TPG).**

United States District Court, S.D. New York.

Aug. 31, 1995.

Order Amending Opinion Sept. 28, 1995.

**128**

David L. Mazaroli, New York City, for plaintiffs.

Charles E. Schmidt, Kennedy Lillis Schmnidt & English, New York City, for defendants.

## OPINION

GRIESA, Chief Judge.

Plaintiffs in this action seek to recover damages caused by Northwest's loss of a cargo that Northwest had agreed to transport from Chicago to Hong Kong by air. Northwest concedes liability for the loss, but has asserted as an affirmative defense that its liability is limited by the Warsaw Convention. Plaintiffs dispute that Northwest is entitled to the protection afforded by the treaty on grounds that the air waybill failed to state the scheduled stopping places as required by the Convention.

Plaintiffs move for summary judgment seeking an award of $232,156 for the lost cargo and striking Northwest's liability limitation defense. Northwest opposes, and cross-moves for partial summary judgment limiting its liability to $20 per kilogram of lost cargo in accordance with the Convention, for a total of $1,320 for the 66 kilograms of cargo lost.

Plaintiffs' motion is denied. Northwest's cross-motion is granted.

## FACTS

All of the essential facts are conceded by the parties. Plaintiffs, The Tai Ping Insurance Company, Ltd. and Jetergar Ltd., are corporations organized under the laws of a foreign country, with their principal place of business in Hong Kong. They sue, respectively, as the subrogated insurer and the consignee of the shipment at issue. Defendant Northwest Airlines Inc. d/b/a/ Northwest Orient Cargo (referred to as "Northwest") is a Minnesota corporation with offices in Minnesota and New York. The court has jurisdiction over the action because of the diversity of citizenship of the parties, and because the controversy arises under a treaty of the United States.

In December 1992 Northwest contracted to carry a shipment of aircraft spare parts from Chicago to Hong Kong. The shipment

weighed 66 kilograms and had an FOB value of $232,155. Northwest received the cargo from Air Express International Corp. ("AEI"), an international freight forwarder. Northwest received the shipment in good order and condition in Chicago on December 10, 1992. The value of the cargo was not declared and no supplementary charge was paid. In forwarding the cargo to Northwest, AEI acted as agent for the shipper. AEI prepared an air waybill for carriage of the cargo, and signed it on behalf of the shipper and Northwest.

The scheduled flight route between Chicago and Hong Kong included two stopping places—Anchorage, Alaska and Narita, Japan.

The stopping places were not printed on the air waybill. Only "Chicago" and "Hong Kong" were printed on the waybill. However, Northwest's timetable, which did include the stopping places Anchorage and Narita, were "made part" of the air waybill. The relevant provisions in the waybill are:

2. (b) To the extent not in conflict with the foregoing carriage hereunder and other services performed by each Carrier are subject to:

\* \* \* \* \* \*

(iii) Applicable tariffs, rules conditions of carriage, regulations and timetables (but not the times of departure and arrival therein) of such carrier, *which are made part hereof and which may be inspected at any of its offices and at airports from which it operates regular service. . . .*

3. . . . The agreed stopping places (which may be altered by Carrier in case of necessity) are those places, except the place of departure and the place of destination, set forth on the face hereof *or shown in Carrier's timetables* as scheduled stopping places for the route. . . . (emphasis supplied).

Northwest's published timetable, the Westbound Transpacific Freighter Schedule, was sent in the ordinary course of business to AEI, and was readily available at Northwest's offices and at airports used by Northwest. In addition, the relevant flight sched-

ule with the stopping places was published in an industry magazine, the *Air Cargo Guide.*

The shipment was lost prior to delivery at Hong Kong, and there has been no explanation for the cause of the loss.

## DISCUSSION

The United States and Hong Kong are signatories to the Warsaw Convention. *See note following* 49 U.S.C.A. § 1502.

The Warsaw Convention limits the carrier's liability for loss or damage to cargo to $20 per kilogram, unless a greater value is declared at delivery and the appropriate supplementary charge is paid. Article 22(2). However, Article 9 provides:

If the carrier accepts goods without an air waybill having been made out, or if the air waybill does not contain all the particulars set out in article 8(a) to (i) inclusive, and (q), the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability.

Article 8 states that the air waybill "shall contain" certain specified information. Subsection (c) of Article 8 requires the air waybill to contain, "the agreed stopping places, provided that the carrier may reserve the right to alter the stopping places in case of necessity. . . ."

Thus, if the air waybill in this case did not "contain" the stopping places of the flight, then Northwest is not entitled to the liability limitation afforded by the Convention.

As already described, the air waybill did not list the stopping places, but a provision in the waybill, section 2(b)(iii), incorporated the timetable by reference, and the timetable specified the stopping places.

■ Northwest argues that this incorporation by reference satisfies the requirements of Articles 8(c) and 9 of the Convention. The court agrees.

■ In interpreting a treaty, a court should strive to "give the specific words of a treaty a meaning consistent with the genuine shared expectations of the contracting parties" to the treaty. *Maximov v. United States,* 299 F.2d 565, 568 (2d Cir.1962), *aff'd,*

373 U.S. 49, 83 S.Ct. 1054, 10 L.Ed.2d 184 (1963). For a court "to alter, amend or add to any treaty would be ... an usurpation of power and not an exercise of judicial functions." *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 135, 109 S.Ct. 1676, 1684, 104 L.Ed.2d 113 (1989).

■ The authorities agree that the purpose of the authors of the treaty in requiring the air waybill to "contain" the stopping places was to assist in determining whether or not the carriage would be international, so that it could be determined whether the flight would be governed by the Warsaw Convention. *See Kraus v. KLM*, 92 N.Y.S.2d 315, 317 (Sup.Ct.N.Y.County 1949), *aff'd*, 278 A.D. 811, 105 N.Y.S.2d 351 (App.Div. 1st Dep't 1951); *accord American Smelting and Refining Co. v. Philippine Air Lines, Inc.*, 4 Avi. 17,413 (Sup.Ct.N.Y.County 1954) (not officially reported), *aff'd*, 285 A.D. 1119, 141 N.Y.S.2d 818 (App.Div. 1st Dep't 1954), *aff'd*, 1 N.Y.2d 866, 153 N.Y.S.2d 900, 136 N.E.2d 14 (1956). The *American Smelting* decision quotes two recognized authorities on the Warsaw Convention, K.W. Beaumont and D. Goedhuis, who take this view. 4 Avi. at 17,414. Under the Convention, the stopping places are relevant in determining the character of the flight, especially in a case where the arrival and destination points are within the same country. If the flight makes an agreed stop in a foreign country along the way, then the whole flight is deemed international in nature. *See* Article 1(2).

In the court's view the purpose of the requirement about stopping places is sufficiently served if the waybill refers the reader to a source of that information which is readily available. Thus, it would be consistent with the Convention's purpose to construe the phrase "shall contain ... the stopping places" to include incorporation by reference of an available timetable listing the stopping places.

■ Incorporation by reference is an accepted method of drafting contractual documents. *See* 1 Arthur Linton Corbin, *Corbin on Contracts* § 33, at pp. 132–133 (1963 and Supp.1994). Black's Law Dictionary defines "incorporation by reference" as follows:

*Incorporation by reference.* The method of making one document of any kind become a part of another separate document by referring to the former in the latter, and declaring that the former shall be taken and considered as a part of the latter the same as if it were fully set out therein....

To the extent that there is case authority, it supports the view that incorporation by reference satisfies Article 8(c). *Kraus v. KLM, supra*, so holds. The lower court opinion, which was affirmed, stated:

The incorporation by reference to a published and readily available time table is a sufficient compliance with the provisions of Article 8(c) of the Warsaw Convention, especially in this case, since the international character of the air carriage could readily be determined from the 'place of departure' and the 'place of destination' appearing on the face of the air waybill.

92 N.Y.S.2d at 317. Two English decisions uphold incorporation by reference under Article 8(c). *Corocraft Ltd. v. Pan American Airways, Inc.*, [1969] 1 Q.B. 616, 628 (Q.B.D., 1968), *rev'd on other grounds*, [1969] 1 Q.B. 648 (C.A., 1968); *Rotterdamsche Bank v. British Overseas Airways Corp.*, [1953] 1 L.L.R. 154, 160 (Q.B.D., 1953). The value of uniform treaty application across international boundaries is a significant factor weighing in favor of accepting the English interpretation. *Reed v. Wiser*, 555 F.2d 1079, 1083 (2d Cir.1977).

An analogous case is *Grey v. American Airlines*, 95 F.Supp. 756 (S.D.N.Y.1950), *aff'd*, 227 F.2d 282 (2d Cir.1955), dealing with an airline passenger ticket. The plaintiff passenger argued that the ticket at issue did not set forth the stopping places, and that therefore the Warsaw Convention limitation did not apply. The district judge held that the limitation applied, reasoning that, in contrast to air waybills for freight, a ticked issued to a passenger need not contain all of the particulars set forth in the Convention in order for the liability limitation to apply, so long as a ticket was issued to the passenger. As an alternative ground for his ruling, the judge observed:

Further, while the ticket itself did not set forth the agreed stopping places, the ticket did provide that the 'agreed stopping places' would be those set forth on the ticket and/or shown in the carrier's time table as scheduled stopping places on the passenger's route.

*Id.* at 758. The Court of Appeals agreed. *See* 227 F.2d at 284.

Plaintiffs suggest that the above cited cases are outdated and unauthoritative, in light of two recent applications of the Warsaw Convention by the Second Circuit in *Maritime Ins. Co. Ltd. v. Emery Air Freight Corp.*, 983 F.2d 437 (2d Cir.1993) and *Victoria Sales Corp. v. Emery Air Freight, Inc.*, 917 F.2d 705 (2d Cir.1990). However, these cases do not deal with the issue of incorporation by reference, nor do they provide guidance as to the issue of treaty interpretation posed in the present case.

The court concludes that the Convention requirement regarding stopping places was satisfied by the air waybill's incorporation by reference of the Northwest timetable. The timetable had been sent to the shipper's agent, AEI, and was available at Northwest's offices and at airports. The information was published in an industry magazine.

To return to the earlier remarks about the purpose of the Convention provision, the international character of the flight was apparent from the listing of the points of departure and arrival in the waybill. The court does not take this as excusing compliance with the requirement that the waybill contain the stopping places. Nonetheless, this circumstance is of some help in showing why a narrow interpretation of the Convention requirement would serve no valid purpose in this case, and why it is reasonable and just to allow incorporation by reference, which in no way departs from a faithful application of the treaty language.

### CONCLUSION

Plaintiffs' motion for summary judgment is denied, and Northwest's cross-motion for partial summary judgment is granted. Northwest is entitled to judgment declaring that the Warsaw Convention limits its liability to $1,320 in this case.

SO ORDERED.

### *ORDER AMENDING OPINION*

The court issued an opinion in this matter dated August 30, 1995. Part of the opinion dealt with plaintiffs' motion for summary judgment seeking an award of $232,156 for lost cargo and striking Northwest's liability limitation defense. The opinion stated, without qualification, that plaintiffs' motion was denied.

However, the opinion should reflect that, although Northwest challenged plaintiffs on the amount of damages, it conceded liability for the loss. Thus, the opinion of August 30, 1995 is amended to state that plaintiffs' motion for summary judgment is granted to the extent of determining that Northwest is liable for the loss, but plaintiffs' motion is denied to the extent that plaintiffs seek an award of $232,156 and seek to strike Northwest's liability limitation defense.

It is directed that the judgment of September 7, 1995 should be amended accordingly.

SO ORDERED.