T.C. Memo. 2014-173

UNITED STATES TAX COURT

ZHENGNAN SHI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7218-12.                    Filed August 26, 2014.

Zhengnan Shi, pro se.

<u>George W. Bezold</u>, for respondent.

MEMORANDUM OPINION

COHEN, <u>Judge</u>:  Respondent determined a $567 deficiency in petitioner's

Federal income tax for 2009.  The issues for decision are whether petitioner is

liable for tax on unreported interest income and, if so, at what tax rate.  Unless

otherwise indicated, all section references are to the Internal Revenue Code in

effect for the year in issue, and all Rule references are to the Tax Court Rules of

**[*2]** Practice and Procedure. Additionally, all article references are to the Agreement Between the Government of the United States of America and the Government of the People's Republic of China for the Avoidance of Double Taxation and the Prevention of Tax Evasion with Respect to Taxes on Income, Apr. 30, 1984, T.I.A.S. No. 12,065 (China treaty), unless otherwise stated.

Petitioner could not appear for trial in the United States. He initially proposed that the parties submit the case under Rule 122, but respondent was not willing to do so. At the Court's urging, respondent prepared a stipulation that could be the basis for submission without trial under Rule 122, but petitioner declined to execute that stipulation. Each party submitted a pretrial memorandum that was treated as an offer of proof for purposes of deciding the legal issues presented. See Rule 1(a), (d).

## Background

As no facts were stipulated, undisputed facts were discerned from the filings of the parties, which included documents that were contemporary to the relevant events of this case. Petitioner resided in Wisconsin at the time his petition was filed.

Petitioner, a citizen of the People's Republic of China (China), first entered the United States on August 10, 1999, on an F-1 visa. The F-1 visa allowed

[*3] petitioner to attend U.S. universities where he obtained his master's degree and doctorate in computer science.

In 2005, petitioner worked as a professor at a New York State university and earned wages of $62,711.49. Petitioner had his 2005 Federal tax return prepared by H and R Block Eastern Enterprises. On his 2005 Form 1040, U.S. Individual Income Tax Return, petitioner excluded $5,000 for personal services performed while a student. In an attached treaty benefit statement, petitioner stated: "BECAUSE TAXPAYER HAS BEEN IN THE U S SINCE AUGUST 1999 ON A VALID AND RENEWED F1 VISA FOR EDUCATION AND TRAINING HE NOW MUST FILE ON FORM 1040, BUT IS STILL ALLOWED A $5000 INCOME DEDUCTION UNDER U.S. - CHINA TAX TREATY ARTICLE 20(c)." Petitioner signed the 2005 tax return, which reported a refund due of $2,674. He received the refund in April 2006.

From August 24, 2008, through May 22, 2012, petitioner had an H-1B visa, which permitted him to work as an assistant professor for the University of Wisconsin-Whitewater (UW-Whitewater). During some or all of this period, petitioner maintained an apartment and an office in Whitewater, Wisconsin.

On or around April 29, 2008, petitioner prepared Form 1040X, Amended U.S. Individual Income Tax Return, for his 2005 tax year. On an attached Form

[*4] 8833, Treaty-Based Return Position Disclosure Under Section 6114 or 7701(b), petitioner explained his treaty-based return position, stating that "[u]nder the residency rules of IRC 7701(b) the taxpayer passed the substantial presence test in 2004 and his residency starting date was January 1, 2004. This means that for 2005, the taxpayer is a resident alien for tax purposes and is filling [sic] form 1040 for 2005 as a resident alien." Petitioner further stated that "even though the taxpayer has become a resident alien under the substantial presence test of IRC 7701(b), he may still claim the benefit of article 19 of the USA-China income tax treaty. The taxpayer has elected to do this, and is claiming an exclusion from gross income for 2005 of $62,711.49 in professor wages". Petitioner echoed these statements in his self-made "Return Notes" under the title "TREATY BENEFIT STATEMENT", which he attached to his signed amended return. As a result, petitioner excluded gross income of $62,711.49 and reported another refund due for 2005.

On or around March 30, 2009, petitioner received a refund of $9,209 with respect to the 2005 amended return. Petitioner also received from the Government $2,098 of interest in relation to this refund.

Petitioner had his 2009 Federal tax return prepared by a certified public accountant from Wellnitz Tax and Accounting in Whitewater, Wisconsin. On

[*5] Form 1040 and Schedule B, Interest and Ordinary Dividends, petitioner did not report the $2,098 of refund interest as income received in 2009. Petitioner did report his $72,225 of wages from UW-Whitewater but did not claim any treaty exemptions on his 2009 tax return. Petitioner's address shown on his return was in Whitewater, Wisconsin.

The IRS sent to petitioner a notice of deficiency dated December 27, 2011, explaining that he had failed to report the interest income. Petitioner timely filed a petition with this Court.

After the spring 2012 semester, UW-Whitewater did not renew petitioner's employment contract. Without a job, petitioner applied for a B-2 visa as a temporary visitor, but the visa was not granted. Petitioner voluntarily left the United States in the latter part of 2012.

Petitioner filed the petition in this case on March 19, 2012. Petitioner's only address shown on the petition was in Whitewater, Wisconsin.

There is no record of petitioner's having left the United States from his arrival in August 1999 up to the latter part of 2012. Petitioner's passport shows no official markings other than a stamp displaying, in part, Chinese characters and "[1999]", a stamp from the American Embassy in Beijing with the date June 1999,

[*6] and a U.S. immigration stamp shown above petitioner's U.S. visa indicating that petitioner was admitted into the United States on August 10, 1999.

Discussion

Respondent argues that petitioner was required to report the $2,098 of interest income that he received in 2009 on his Federal tax return for that year. Over the course of these proceedings, petitioner has contended that: (1) if the IRS had processed his 2005 tax return correctly, then he would have received any interest due from the refund in 2006, a tax year that would have absorbed the interest income with no taxable result; (2) the interest is exempt income because it arose from exempt income; namely, the second 2005 tax refund, which derived from a treaty exemption claimed on petitioner's 2005 amended tax return; and (3) in the alternative, petitioner reasons that if the interest income is required to be reported, then article 10 of the China treaty limits the tax rate to 10%. Petitioner asserts that this 10% treaty limitation applies whether or not he was a resident of the United States and maintains that he was a resident of China in 2009.

Generally, the taxpayer bears the burden of proving that the Commissioner's determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). This Court has recognized an exception to these rules in cases involving unreported income where the Commissioner introduces no substantive evidence

**[*7]** but relies solely on the presumption of correctness. Jackson v.

Commissioner, 73 T.C. 394, 401 (1979). Here, however, petitioner admits to

having received the interest income, and thus respondent's burden is satisfied.

Nevertheless, petitioner has repeatedly asserted that the burden of proof lies

with respondent. The burden of proof with respect to a factual issue may be

placed on the Commissioner under section 7491(a) if the taxpayer introduces

credible evidence regarding that issue and establishes that the taxpayer complied

with the requirements to substantiate items, maintain records, and fully cooperate

with the Commissioner's reasonable requests. Sec. 7491(a)(2)(A) and (B).

Petitioner, however, has failed to establish that he complied with the requirements

of section 7491(a). As a result, the burden of showing the interest to be

nontaxable, or to be taxable at a reduced rate, remains with petitioner. In any

event, this case is decided on the preponderance of the undisputed evidence.

Petitioner's first contention, that if he had received the interest income in

2006 then there would be no issue, is groundless. The IRS processed his original

2005 return in accordance with his reporting. Petitioner did not claim the bulk of

the treaty exemptions until he filed a 2005 amended return in 2008. His

expectation that the IRS should have known what he meant to report, when even

**[*8]** he and his tax return preparation service apparently did not, is an untenable position.

Petitioner's second contention is that the interest is exempt income because it arose from exempt income, i.e., the tax refund that derived from the treaty exemption claimed on the 2005 amended return.  In the case of an overpayment of tax, the Government may credit the amount of such overpayment, including any interest allowed thereon, and refund any balance.  Sec. 6402.  It is well-established law that interest is generally taxable as income to the recipient, including interest resulting from a tax refund.  See secs. 61(a)(4), 861(a)(1), 871(a)(1)(A); sec. 1.61-7(a), Income Tax Regs.; see also, e.g., Muir v. Commissioner, B.T.A.M. (P-H) para. 32, 328, at 32-35 (1932) ("[T]he interest upon the over-payment for 1919 did constitute taxable income * * * [and] such interest which was received by the petitioner should be included in the amount of his gross income." (Citation omitted.)).  Exclusions from income are to be narrowly construed.  Commissioner v. Schleier, 515 U.S. 323, 328 (1995).

Petitioner failed to cite any authority for his contention that interest takes on the character of exempt income if it is tangentially based upon exempt income.  Because petitioner failed to show an exclusion for interest income deriving from a tax refund, the interest is includable in income.

**[*9]** Petitioner's alternative argument is that the interest income is taxable but only at a 10% rate pursuant to article 10. While declaring himself to have been a resident solely of China in 2009, petitioner nevertheless argues that the 10% tax rate of article 10 applies whether he is a resident of the United States, China, or both.

When a treaty is interpreted, its words are construed according to their ordinary meaning. Amaral v. Commissioner, 90 T.C. 802, 812 (1988); see Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 180 (1982). Where the Internal Revenue Code provides for the taxation of income, ''[w]hatever basis there may be * * * for relieving * * * [such] tax must be found in the words or implications of the * * * [treaty].'' Maximov v. United States, 373 U.S. 49, 51 (1963). While neither a treaty nor U.S. revenue laws have preferential status, Internal Revenue Code provisions nonetheless are to be applied with due regard to germane tax treaty provisions. Secs. 894, 7852(d)(1); see Amaral v. Commissioner, 90 T.C. at 812.

The China treaty contains the following provisions. Article 1 provides that "[t]his Agreement shall apply to persons who are residents of one or both of the Contracting States." Article 3.1.c. defines "Contracting State" as meaning either China or the United States, as the context requires. Article 4.1 provides that "the

**[*10]** term 'resident of a Contracting State' means any person who, under the laws of that Contracting State, is liable to tax therein by reason of his domicile, residence, place of head office, place of incorporation or any other criterion of a similar nature." Article 10.1 essentially provides that interest arising in a Contracting State (in this case, the United States) and paid to a resident of the other Contracting State (China) may be taxed in the other Contracting State (China). However, the interest may also be taxed in the Contracting State (United States) according to its laws--but if the recipient is the beneficial owner of the interest, the tax shall not exceed 10% of the gross amount of the interest. Article 10.2. Thus for petitioner to benefit from the China treaty, he must be considered a resident of China as defined by the China treaty.

Petitioner argues that article 4 residency is determined primarily by where an individual has his permanent home. Petitioner states that his permanent home in 2009 was in Beijing, China, and provides as offers of proof his "unsworn foreign declaration" and various exhibits. Conversely, petitioner implies that he could not have been a resident of the United States in 2009 because he never owned a permanent home there. He concludes that he was a resident of China in 2009 as determined by the text of the China treaty.

**[*11]**  Article 4 indicates that to be a resident of China for purposes of the China treaty, petitioner must show that under Chinese tax statutes and laws he was liable for taxation in 2009 because he resided (or was domiciled or something to that effect) in China.  "Resident", "domicile", and other such terms as used in law have "various degrees of meaning from temporary physical presence to permanent abode, and the meaning of these words in a statute depends upon the context and the purpose of the statute in which they occur."  Simenon v. Commissioner, 44 T.C. 820, 834 (1965).  The Court there explained:

> The rule relating to establishing a matter of foreign law is that judicial notice by a court cannot be taken of foreign law, as opposed to local law, the laws of the United States and general matters of domestic law, to which the concept of judicial notice extends.  Under article VI, clause 2, of the Constitution, treaties are laws of the United States, * * * so that we may take judicial notice of the tax treaty * * *; but where, in the context of a treaty, the meaning of a treaty term depends upon a law of the foreign country, we may not ascertain the question of foreign law by resorting to judicial notice.  A question of foreign law is a question of fact to be proved by the party having the burden of proof * * *

Id. at 835 (citation omitted).

Petitioner introduced no Chinese tax law as an offer of proof or otherwise and therefore did not meet this burden of proof.  The provisions of article 10 do not apply to him because he has not shown that he was subject to tax in China, whether or not he was considered a resident of the United States in 2009.

**[*12]** Petitioner's status as a resident of the United States in 2009, however, affects the applicable rate of tax.

An alien individual officially residing within the United States, i.e., a resident alien, is generally subject to Federal taxation in the same manner as a U.S. citizen and thus would file Form 1040, U.S. Individual Income Tax Return. See, e.g., Crow v. Commissioner, 85 T.C. 376, 380-381 (1985) (explaining that the United States taxes its citizens, and ergo its residents, on their worldwide income); Sec. 1.1-1(a) and (b), Income Tax Regs.; see Amaral v. Commissioner, 90 T.C. at 812. A nonresident alien individual, on the other hand, is usually subject to taxation only on U.S. source income and would report such income on Form 1040NR, U.S. Nonresident Alien Income Tax Return. Sec. 871(a); see, e.g., Abdel-Fattah v. Commissioner, 134 T.C. 190, 192 n.3 (2010) (discussing how a nonresident alien should use Form 1040NR because, among other reasons, nonresident aliens are usually ineligible for certain deductions and credits available through Form 1040). Generally, the tax rate imposed on nonresident alien individuals receiving U.S. interest income is 30%. Sec. 871(a)(1). Thus, for tax purposes the distinction between resident alien and nonresident alien could be significant.

**[*13]**   An alien individual is deemed a nonresident alien if she or he is neither a citizen of the United States nor considered a resident of the United States.  Sec. 7701(b)(1)(B).  An alien individual is treated as a resident of the United States with respect to any calendar year if such individual:  (1) is a lawful permanent resident of the United States at any time during the calendar year, (2) meets a substantial presence test, or (3) makes a first-year election to be treated as a resident of the United States.  Sec. 7701(b)(1)(A).  There is no evidence that petitioner was lawfully admitted for permanent residence in the United States at any time in 2009 or that he made an election to be treated as a U.S. resident.  Accordingly, petitioner will be treated as a resident alien only if he meets the substantial presence test provided in section 7701(b)(3).

The substantial presence test is an objective test:  "[A]n individual meets the substantial presence test * * * if * * * such individual was present in the United States on at least 31 days during the calendar year", and for at least 183 days during the calendar year and the two preceding calendar years, calculated pursuant to a weighted formula.  Sec. 7701(b)(3)(A); see Luján v. Commissioner, T.C. Memo. 2000-365, slip op. at 9; sec. 301.7701(b)-1(c)(1), Proced. & Admin. Regs.  An individual is treated as present in the United States on any day that the individual is physically present in the United States at any time during the day.

**[\*14]** Sec. 7701(b)(7)(A).  While an individual may be treated as "not" being in the United States for any day where the individual is considered exempt, such as a teacher who is temporarily present in the United States pursuant to a J or Q visa, such an exception does not apply here, where petitioner held an H-1B visa in 2009.  See sec. 7701(b)(3)(D)(i), (5)(A)(ii), (C).

Respondent argues that petitioner was physically present in the United States during all of the 2008-09 and 2009-10 academic years because he was employed as a professor at UW-Whitewater.  Respondent asserts, therefore, that petitioner was in the United States for more than 183 days in 2009 alone and met the substantial presence test.

Rather than directly deny respondent's allegations, petitioner hypothetically poses that

> professors at the University of Wisconsin frequently take posts in international exchanges.  Being employed as a professor at the University of Wisconsin-Whitewater is no proof and does not imply that Shi was physically present in the United States.  That is, even if Shi was employed as a professor at the University of Wisconsin-Whitewater during all of the 2008-2009 and 2009-2010 academic years, it does not guarantee that Shi was physically present in the United States, at all, during all of the 2008-2009 and 2009-2010 academic years.

Petitioner states that he was unable to discover documents held by UW-Whitewater that would have shown direct evidence supporting his position.

[*15] Petitioner concludes that, without convincing evidence, the supposition that he met the substantial presence test is no more than an arbitrary statement.

The preponderance of evidence offered is that petitioner was present in the United States from August 1999 to sometime in 2012. Petitioner's speculations to the contrary are weak and suspect. In addition, petitioner had previously attested in his tax returns that he met the substantial presence test in an earlier year, and his actions reflect that he considered himself a resident alien in 2009.

On his 2005 Federal tax return, petitioner included a note stating that because he had been in the United States since August 1999, he had to file Form 1040. A similar but more exact statement was made on his 2005 Form 1040X: "Under the residency rules of IRC 7701(b) the taxpayer passed the substantial presence test in 2004 and his residency starting date was January 1, 2004. This means that for 2005, the taxpayer is a resident alien and is filling form 1040 for 2005 as a resident alien." Thus petitioner, a well-educated man, determined through the substantial presence test that he was a resident alien in 2004 and, as a result, remained a resident alien in 2005. On both his 2005 tax return and 2005 amended return, petitioner signed the jurat declaring to the best of his knowledge that the statements made within the returns were true, correct, and complete.

**[\*16]** Section 1.871-5, Income Tax Regs., provides:

> Loss of residence by an alien.--An alien who has acquired residence
> in the United States retains his status as a resident until he abandons
> the same and actually departs from the United States.  An intention to
> change his residence does not change his status as a resident alien to
> that of a nonresident alien.  Thus, an alien who has acquired a
> residence in the United States is taxable as a resident for the
> remainder of his stay in the United States.

See also sec. 7701(b)(2)(B).

The significance of his declarations in his 2005 tax returns with respect to the 2009 tax year in issue is that once petitioner became a resident of the United States, he remained a resident until he actually departed from the United States in 2012.  Petitioner's actions--having filed Form 1040 instead of Form 1040NR for his 2005 and 2009 tax years--showed his understanding that he retained his resident status established in 2004.

Here, where the facts regarding petitioner's actual presence in the United States in 2009 are less direct, reliance, in part, on section 1.871-5, Income Tax Regs., is warranted.  Cf. Park v. Commissioner, 79 T.C. 252, 288 (1982) (finding that it was unnecessary to decide whether the taxpayer acquired residence in the United States at some time before the year in issue because the facts were sufficient to determine whether the taxpayer was a resident during the year in issue), aff'd without published opinion, 755 F.2d 181 (D.C. Cir. 1985).

**[\*17]** There is an exception that permits individuals to avoid resident status even if they meet the substantial presence test.  Section 7701(b)(3)(B) provides for this exception in cases where an individual:  (1) was present in the United States less than one-half of the year in issue, (2) maintains a tax home in a foreign country, and (3) has a closer connection to the foreign country than to the United States.  Petitioner failed to show that this exception applied to him in 2009.

Because petitioner apparently never left the United States from August 1999 to late 2012 and had previously determined himself to be a resident alien under the substantial presence test, we conclude that he was a resident alien for 2009.  Accordingly, the interest income was ordinary income in 2009 and taxable under the appropriate graduated tax rate.

We now briefly address petitioner's concern as to not being able to perform discovery on UW-Whitewater and others.  The Rules of this Court do not allow for third-party discovery except for depositions through subpoena.  Rule 74.  See generally Rules 70-73.  Such depositions are extraordinary and would not have been feasible in petitioner's absence nor appropriate in this case.  Respondent made informal requests to various parties, and those requests were honored.  Petitioner requested information from sources with which he had disputes and followed with angry accusations that discouraged cooperation.  The Court has no

**[*18]** authority to order the remedies that petitioner sought by his various, repetitious motions.

We have considered the other arguments of the parties, but they are irrelevant, unsupported by the record or by authority, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.