UNITED STATES of America, Plaintiff–Appellee,

v.

Dragisa LAZAREVICH, Defendant–Appellant.

No. 97–50282.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 4, 1998.[*]

Decided June 23, 1998.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Michael Tanaka, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

David R. Fields, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: WALLACE, TROTT, and HAWKINS, Circuit Judges.

TROTT, Circuit Judge:

Dragisa Lazarevich was extradited from the Netherlands in 1996 to face federal charges in a criminal complaint involving passport fraud. He appeals the sentence imposed after his criminal conviction, arguing that it constitutes punishment for a non-extradited offense in violation of the extradition treaty between the United States and the Netherlands. He also appeals the district court's denial of his motion to dismiss the indictment due to outrageous government conduct. We affirm on both grounds.

## I. Facts

### A.

Lazarevich abducted his children in 1989 after a California court awarded his wife primary custody. He took the children from their home in California to Serbia and refused to release them to their mother for six years. In 1995, he finally released them to American officials, and they were returned to their mother.

Lazarevich was extradited to the United States from the Netherlands in 1996. Dutch officials had apprehended him while he was travelling in the Netherlands. Dutch officials granted extradition on charges that Lazarevich had made false statements on the passport applications of his two children.

They refused extradition for charges of child abduction on the ground that Lazarevich had already been tried and convicted on similar charges by the Court of Belgrade in 1992.

Upon his return to the United States, Lazarevich was indicted for making false statements on passport applications in violation of 18 U.S.C. § 1542. He was convicted of making false statements on the passport application of one of his children.

The district court sentenced Lazarevich to 24 months imprisonment and three years of supervised release. The district judge arrived at that sentence by departing upward from Lazarevich's base offense level, which was six, to an offense level of fourteen. The judge found that various aggravating circumstances justified the increase.

Pursuant to United States Sentencing Guideline (U.S.S.G.) § 5K2.9, the court departed upwards after finding, by a preponderance of the evidence, that the offense was committed to facilitate another offense: the abduction of Lazarevich's children. Pursuant to U.S.S.G. § 4A1.3(a), the district judge increased Lazarevich's criminal history category from I to II. She based that increase on Lazarevich's 1992 conviction for child abduction in the Court of Belgrade.

In total, the upward departure and increase in criminal history category produced a sentencing range of 18–24 months. The judge sentenced Lazarevich to the maximum of that range.

Lazarevich appeals his sentence. He argues that the sentence punishes him for abducting his children and therefore violates the extradition treaty between the United States and the Netherlands. The treaty prohibits punishment for non-extradited offenses.

### B.

Lazarevich also appeals the district court's denial of his motion to dismiss the indictment for outrageous government conduct. He claims the court could not legitimately deny his motion without conducting an evidentiary hearing. He also claims the district court erred when it determined that he had failed to demonstrate a factual basis for his motion.

## II. Discussion

### A.

■ We review application of the Sentencing Guidelines to the facts of a case for abuse of discretion, and we review legal interpretation of the Guidelines de novo. *United States v. Aguilar–Ayala*, 120 F.3d 176, 177–78 (9th Cir.1997). Interpretations of extradition treaties also receive de novo review. *United States v. Merit*, 962 F.2d 917, 919 (9th Cir.1992).

■ The Extradition Treaty between the United States and the Netherlands incorporates the doctrine of specialty. It provides that a person "extradited under this Treaty shall not be detained, tried, or punished in the territory of the Requesting State for an offense other than that for which extradition has been granted." Netherlands–Extradition, Art. XV, June 24, 1980, U.S.-Neth.; 35 U.S.T. 1334, 1342 (the Treaty). The doctrine of specialty embodies the principle of international comity: "to protect its own citizens in prosecutions abroad, the United States guarantees that it will honor limitations placed on prosecutions in the United States." *United States v. Andonian*, 29 F.3d 1432, 1435 (9th Cir.1994) (citation omitted). Protection of the doctrine of specialty "exists only to the extent that the surrendering country wishes." *SEC v. Eurobond Exchange, Ltd.*, 13 F.3d 1334, 1337 (9th Cir. 1994) (quoting *United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir.1986)).

■ Lazarevich was neither detained nor tried on child abduction charges. The question here is whether he was punished for child abduction. Based on his abduction of the children, Lazarevich's base offense level and criminal history category were increased. These increases led in turn to a longer sentence. Thus, Lazarevich argues, he was punished for his abduction of the children in violation of the Treaty.

We reject Lazarevich's argument for the following reasons. The Supreme Court has held that the "use of evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within the

authorized statutory limits does not constitute punishment." *Witte v. United States,* 515 U.S. 389, 399, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995); *see United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 634, 638, 136 L.Ed.2d 554 (1997) (overturning two Ninth Circuit cases that held "sentencing courts could not consider conduct of the defendants underlying charges of which they had been acquitted"). While both Supreme Court cases dealt with double jeopardy concerns, their holdings are relevant to this case as well.

Lazarevich asserts that the fact that this case involves extradition removes it from the reach of the Supreme Court's holdings in *Witte* and *Watts.* The upward departure, he argues, "violated the· spirit and mutual understanding" of the extradition agreement and treaty. The agreement and the Treaty were made, however, within an historical and precedential context. That context includes the long-standing practice of United States courts of considering relevant, uncharged evidence at sentencing. ·

In *Witte,* the Supreme Court examined the history of courts' use of related, criminal conduct in sentencing—a history dating back to before the founding of the country. *Witte,* 515 U.S. at 397–98, 115 S.Ct. 2199. The Supreme Court relied on that history when it held that the Due Process Clause did not "require that courts ... abandon their age-old practice of seeking information from out-of-court sources to guide their judgment toward a more enlightened and just sentence." *Id.* at 398, 115 S.Ct. 2199 (quoting *Williams v. New York,* 337 U.S. 241, 250–51, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). The Supreme Court also cited that history when it explained that the Sentencing Guidelines did not change its holdings regarding the consideration of relevant, criminal behavior. *Id.* at 398–99, 402, 115 S.Ct. 2199. The Court explained that the Sentencing Guidelines "are designed to channel the sentencing discretion of the district courts" but that "[r]egardless of whether particular conduct is taken into account by rule or as an act of discretion, the defendant is still being punished only for the offense of conviction." *Id.* at 402, 115 S.Ct. 2199.

. Lazarevich argues that no "technical gloss from the [Sentencing Guideline's] principle of relevant conduct" should overcome the plain meaning of "punishment." Lazarevich cites two cases. The first, *Sumitomo Shoji, America, Inc. v. Avagliano,* 457 U.S. 176, 180, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982) (quoting *Maximov v. United States,* 373 U.S. 49, 54, 83 S.Ct. 1054, 10 L.Ed.2d 184 (1963)), states that plain language of a treaty must be followed unless a plain language interpretation "effects a result inconsistent with the intent or expectations of" the signatory nations. If the plain meaning of punishment is interpreted to preclude consideration of other criminal behavior in sentencing, that interpretation would seem to "effect a result inconsistent with the intent" of at least the United States, given its long history of considering such conduct. The second case cited by Lazarevich held that federal, not local or state law, should be used to guide treaty interpretation. *See De Geofroy v. Riggs,* 133 U.S. 258, 271, 10 S.Ct. 295, 33 L.Ed. 642 (1890). It does not support Lazarevich's contentions.

Given the long history of consideration of relevant evidence—including other criminal behavior, the Sentencing Guidelines' clear mandate of such consideration, and Supreme Court precedent, we conclude that the Treaty and the extradition agreement contemplated consideration of relevant offenses. In pre-*Witte* cases, two of our sister circuits drew similar conclusions. *See Leighnor v. Turner,* 884 F.2d 385, 390 (8th Cir.1989) (holding that an increase in parole release guideline range due to non-extradited offense did not violate the doctrine of specialty); *United States v. Davis,* 954 F.2d 182, 187 n. 2 (4th Cir.1992) (stating in dicta that "the fact that the trial court potentially considered the defendant's prior illegal accounting practices in imposing a sentence does not mean that [the defendant] was punished for those offenses.") Furthermore, protection of the doctrine of specialty "exists only to the extent that the surrendering country wishes." *Eurobond Exchange, Ltd.,* 13 F.3d at 1337 (quoting *Najohn,* 785 F.2d at 1422). We can find no evidence in the record that the Netherlands wished the doctrine to protect La-

zarevich from the upward departure. Thus, we conclude the district court was within its discretion when it increased Lazarevich's base offense level, and we affirm.

## B.

We review de novo the district judge's decision to deny Mr. Lazarevich's motion to dismiss the indictment based on outrageous government conduct. *See United States v. Edmonds,* 103 F.3d 822, 825 (9th Cir.1996). We review for clear error the district judge's findings of fact with regard to the motion to dismiss the indictment. *United States v. Armenta,* 69 F.3d 304, 306 (9th Cir.1995).

While, as Lazarevich argues, an evidentiary hearing might have helped resolve conflicting statements of the United States and Serbian officials, such a hearing would have required another continuance and further delay. Numerous continuances had previously been granted. Lazarevich had over seven months to prepare for the hearing on the motion. The district judge was well within her discretion to deny the continuance requested—and, in turn, the evidentiary hearing. *See Villafuerte v. Stewart,* 111 F.3d 616, 633 (9th Cir.1997).

The district court properly denied Lazarevich's motion to dismiss the indictment for outrageous government conduct. Lazarevich does not contest the fact that he bore the burden of demonstrating a factual basis for his motion to dismiss. Finding the evidence in equipoise, the district judge was required to rule against Lazarevich. Her finding was not clearly erroneous and her holding was not improper.

AFFIRMED.