**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**September 28, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

—————————

No. 05-20408

—————————

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

ROBERT NICHOLAS ANGLETON,

                                        Defendant-Appellant.

—————————

Appeal from the United States District Court
For the Southern District of Texas
USDC No. 4:03-CR-264-1

—————————

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

    Defendant-Appellant Robert Angleton pleaded guilty to two counts of aiding and abetting the delivery and misuse of a passport, in violation of 18 U.S.C. § 1544, and to one count of conspiracy to commit passport fraud, in violation of 18 U.S.C. § 371.  He raises on appeal three challenges to his sentence.  We affirm.

I

—————————

    [*]  Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

The State of Texas charged Robert Angleton with the capital murder-for-hire of his wife, Doris Angleton, but a Texas jury acquitted him of the crime. A federal grand jury then indicted him for the same crime, an indictment that this court declined to dismiss on double-jeopardy grounds.[1]

On June 12, 2003, four days before his federal trial was scheduled to begin, Angleton failed to appear for a pre-trial conference and a bench warrant issued. That same day, Angleton was detained by Dutch immigration officials at Schiphol Airport in Amsterdam, for attempting to enter the Netherlands with an altered passport in the name of Alan August. Dutch officials also found several other fake identification documents, including social security cards and drivers licences.

Angleton and a co-defendant, Lorenzo Salinas, were charged in the present case with two counts of misuse of a passport, and one count of conspiracy to commit passport fraud. Angleton was also charged with one count of failure to appear in the murder-for-hire case.[2] The Netherlands extradited Angleton on the three passport charges, but refused to extradite him on the failure-to-appear charge or on the murder-for-hire charge itself. Angleton pleaded

---

[1]*See United States v. Angleton*, 314 F.3d 767 (5th Cir. 2002).

[2]Angleton had previously been charged with three counts of tax evasion relating to his bookmaking activities in a separate case. These charges remain pending against him in district court.

2

guilty to the three passport-related charges without the benefit of a plea agreement.

Under U.S.S.G. § 2L2.2(a), the base offense level for misuse of a passport is eight.  The Presentence Report applied the cross reference in 2L2.2(c)(1)(A) because Angleton committed the passport offense in the commission of a felony, failure to appear.  The failure to appear guidelines, 2J1.6(b)(2)(A), provide for a base offense level fifteen because the crime for which Angleton failed to appear, murder for hire, is punishable by more than fifteen years.  Upon the government's objection, the Presentence Report further applied a four-level adjustment under 3B1.1(a) based upon a finding that Angleton was an organizer or leader of an extensive criminal activity.  After subtracting two points for acceptance of responsibility, the Presentence Report recommended a guideline sentence range of 24-30 months' imprisonment, based on an offense level of seventeen.

The government moved for upward departure under U.S.S.G. §§ 5K2.7 for disruption of governmental function, under 5K2.9 for criminal purpose, and under 5K2.21 for dismissed uncharged conduct.  The government also urged that a non-guideline sentence was appropriate based on the section 3553(a) factors.  It requested that the court sentence Angleton to 15 years' imprisonment.

The district court agreed that upward departure under the guidelines was appropriate, ruling that the recommended sentence range did not adequately capture the criminal purpose and planning

of Angleton's offense, the disruption of governmental functions caused by Angleton's offense, or the seriousness of Angleton's unextradited offenses. The district court further ruled that the section 3553(a) factors justified an upward deviation to a non-guideline sentence because of the criminal purpose for which Angleton committed the offense. The court balked, however, at the government's proposed 15-year sentence and instead sentenced Angleton to 60 months' imprisonment.

Angleton appeals his sentence on three grounds, arguing that (1) the district court clearly erred in finding that he was organizer or leader of an extensive criminal activity; (2) the district court erred in departing upward based on his disruption of a governmental function; and (3) the district court unlawfully considered during sentencing his failure to appear, in contravention of Article XV of the extradition treaty between the United States and the Netherlands.

II

The district court applied a four-level adjustment under U.S.S.G. § 3B1.1(a), finding that Angleton operated as an organizer or leader of an extensive criminal activity. Angleton first contends that the district court clearly erred in applying this adjustment since there was no evidence that (1) his criminal activities were extensive or (2) he operated as an organizer or leader of those activities. On both points, we disagree, and hold

4

that the district court did not clearly err in finding the requisite facts to support this four-level role adjustment.

The district court's decision to enhance a sentence under the Guidelines "will be upheld if it results from a legally correct application of the Guidelines to factual findings that are not clearly erroneous."[3]

On the first point, Angleton attacks the district court's finding that his criminal activity was "otherwise extensive." Section 3B1.1(a) of the Guidelines provides a four-level adjustment "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive . . . ."[4] The Guidelines further provide that "[i]n assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive."[5] In finding Angleton's crime extensive, the district court ruled:

> Here we clearly have that kind of involvement by a great many providers of services, ranging from the banks, people who provided the false identifications, unknown people and unknowing people, presumably, in different countries. 'Otherwise extensive' is not difficult to reach in — on these facts."

---

[3]*United States v. Jobe*, 101 F.3d 1046, 1065 (5th Cir. 1996).

[4]U.S.S.G. § 3B1.1(a).

[5]U.S.S.G. § 3B1.1 application note 3.

5

Angleton's crime directly included at least three people, Angleton, Sarinas, and August. Further, as the district court noted, several more people, including employees of Sarinas, unknowingly provided services that advanced Angleton's scheme. Given these undisputed facts, and the Guidelines' express endorsement of a sentencing court's consideration of unknowing participants, the district court did not clearly err in finding that Angleton's criminal activity was "otherwise extensive."

On the second point, Angleton also contends that the district court clearly erred in determining that he was an "organizer or leader" of the criminal activity. We have held that "[p]roof that the defendant supervised only one other culpable participant is sufficient to make the defendant eligible for the enhancement."[6] We have further held that "[t]he district court may find that a defendant exercised a leadership/organizer role by inference from the available facts."[7] Here, the district court inferred from the facts that Angleton exercised control over his co-defendant, Sarinas, ruling:

> "[U]nder 3B1.1(a), the Government must prove at least an interdependence between the defendant and the supplier that would support an inference that the supplier is answerable to the defendant. . . . The evidence is that

---

[6] *United States v. Cooper*, 274 F.3d 230, 247 (5th Cir. 2001); *see also United States v. Blaylock*, 413 F.3d 616, 620 (7th Cir. 2005) ("[D]irect or indirect control over a single participant is all that is required.").

[7] *United States v. Cabrera*, 288 F.3d 163, 174 (5th Cir. 2002).

6

Mr. Angleton on a number of occasions told Mr. Sarinas what to do, paid him to do it, Mr. Sarinas did it; and even when that—even when those specific tasks were finished, told Mr. Sarinas to keep the suitcase and then send it to him later. It does appear that there was an extensive relationship between Mr. Angleton and Mr. Sarinas, supported by the large number of telephone calls, that is part of this record, over an extended time period.

It does appear, indeed, that there is a kind of interdependence . . . . It is enough for interdependence that Mr. Sarinas have been instructed by Mr. Angleton to obtain these specific items, illegal items . . . not once, not twice, three times . . . . [I]ndeed, Mr. Sarinas was answerable to Mr. Angleton.

The record supports this inference of control, and we accordingly hold that the district court did not clearly err in finding that Angleton was an organizer or leader of an extensive criminal activity. We therefore affirm the district court's application of the four-level role adjustment under U.S.S.G. § 3B1.1(a).


## III

In his second challenge to his sentence, Angleton argues that the district court erred in granting the government's request for an upward departure based on his disruption of a governmental function as provided by U.S.S.G. § 5K2.7. "This court, in interpreting the *Booker* reasonableness standard, has applied an abuse of discretion standard to the reasonableness inquiry for upwardly departing guidelines sentences."[8]

---

[8]*United States v. Reinhart*, 442 F.3d 857, 862 (5th Cir. 2006).

7

Angleton correctly notes that the sentencing guideline for failure to appear, the section on which his sentence was based, already punishes the defendant for disrupting governmental functions. He supports this argument by citing to section 5K2.7 itself, which advises:

> Departure from the guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a governmental function is inherent in the offense, and *unless the circumstance are unusual* the guidelines will reflect the appropriate punishment for such interference.[9]

The district court, however, found such "unusual" circumstances in this case, noting that Angleton fraudulently applied for not one, but three passports and that Angleton had effectively overruled this court's double jeopardy ruling, and thereby undermined "the rule of law," by fleeing the jurisdiction. Furthermore, the district court rested its upward departure not only on Angleton's disruption of governmental functions, but also on the extent of his "elaborate" and "extensive" planning for the charged crime (5K2.9) and on the seriousness of his uncharged conduct (5K2.21). Finally, the district court also characterized its sentence as a non-guideline deviation, supported by the 3553(a) factors, none of which Angleton discusses on appeal. Based on the district court's thorough explanation of its several reasons for upward departure,

---

[9]U.S.S.G. § 5K2.7 (emphasis added).

we hold that the district court did not abuse its discretion in sentencing Angleton to 60 months' imprisonment.[10]

IV

Finally, Angleton argues that because the Netherlands did not extradite him on the failure to appear charge, and because our extradition treaty with the Netherlands prohibits the requisitioning state from punishing any fugitive for a non-extradited offense,[11] the district court erred in considering Angleton's failure-to-appear conduct during sentencing for the passport offenses. We disagree, and hold that Angleton's sentence does not violate the extradition treaty.[12]

We review *de novo* a district court's determination that a prosecution satisfies the doctrine of speciality.[13] The extradition treaty between the United States and the Netherlands, in incorporating the doctrine of speciality, provides that a person "extradited under this Treaty shall not be detained, tried, *or punished* in the territory of the Requesting State for an offense

---

[10]*See United States v. Saldana*, 427 F.3d 298, 308 (5th Cir.) (affirming an upward departure from 10 to 60 months' imprisonment), *cert. denied*, 126 S.Ct. 810 (2005), *and cert. denied*, 126 S.Ct. 1097 (2006).

[11]Technically, the treaty prohibits the requisitioning state from punishing a fugitive for any *previously-committed* non-extradited offenses.

[12]It is still an open question in this circuit whether a criminal defendant has standing to assert the rule of speciality. *See United States v. LeBaron*, 156 F.3d 621, 627 (5th Cir. 1998). We again leave that question unanswered since here we hold only that Angleton's prosecution did not, in any event, violate the doctrine.

[13]*United States v. LeBaron*, 156 F.3d 621, 626 (5th Cir. 1998).

other than that for which extradition has been granted."[14]  Angleton contends that the district court, by considering his failure-to-appear conduct in sentencing him for the passport offense, punished him for both crimes.

The three circuits that have addressed this question disagree with Angleton.  In construing this very same Dutch extradition treaty, the Ninth Circuit held that "[g]iven the long history of consideration of relevant evidence — including other criminal behavior, the Sentencing Guidelines' clear mandate of such consideration, and Supreme Court precedent, we conclude that the Treaty and the extradition agreement contemplated consideration of relevant offenses."[15]  The Eighth Circuit agrees, and has held that the doctrine of speciality "is generally understood to prohibit indiscriminate *prosecution* of extradited individuals rather than to prohibit the receiving state's consideration of pre-extradition offenses while prosecuting the individual for crimes for which extradition was granted."[16]  Finally, the Sixth Circuit also agrees, and has held that a sentencing enhancement based upon a defendant's

---

[14]Netherlands-Extradition, Art. XV, June 24, 1980, U.S.-Neth., 35 U.S.T. 1334, 1342 (emphasis added); *see also United States v. Archbold-Newball*, 554 F.2d 665, 685 n.21 (5th Cir. 1977).

[15]*United States v. Lazarevich*, 147 F.3d 1061, 1064 (9th Cir.), *cert. denied*, 119 S.Ct. 432 (1998).

[16]*Leighnor v. Turner,* 884 F.2d 385, 390 (8th Cir. 1989).  *Cf. Fiocconi v. Attorney General of United States*, 462 F.2d 475, 481 (2d Cir. 1972) ("The 'principle of specialty' reflects a fundamental concern of governments that persons who are surrendered should not be subject to indiscriminate prosecution by the receiving government, especially for political crimes.") (Friendly, C.J.).

failure to appear at his arraignment "did not constitute 'punishment' for that conduct so as to violate any implicit proscription against such punishment in the extradition treaty."[17]

The Ninth and Sixth Circuit both rely, in part, on the Supreme Court's decision in *Witte*, which held, in the context of the Double Jeopardy Clause, that "the use of evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within the authorized statutory limits does not constitute punishment for that conduct."[18] The defendant urges, however, that the Supreme Court's definition of "punishment" in the context of the Fifth Amendment is a poor guide to the intended meaning of that term as it was used by the parties to the relevant extradition treaty. We disagree. As the Ninth Circuit has already explained, "the Treaty . . . [was] made within an historical and precedential context," including the "long-standing practice of United States courts of considering relevant, uncharged evidence at sentencing."[19] In *Lazarevich*, the Ninth Circuit rejected the defendant's urging for a plain reading of the term "punishment," concluding "[i]f the plain meaning of punishment is interpreted to preclude consideration of other criminal behavior in sentencing, that interpretation would seem to 'effect a result inconsistent with the

---

[17]*United States v. Garrido-Santana*, 360 F.3d 565, 578-79 (6th Cir. 2004).

[18]*Witte v. United States*, 515 U.S. 389, 399 (1995).

[19]*Lazarevich*, 147 F.3d at 1064.

11

intent' of at least the United States, given its long history of considering such conduct."[20]  We agree with these circuits that the doctrine of speciality is not offended by the Sentencing Guideline's consideration of non-extradited relevant conduct during the punishment of an extradited offense.  The sentence imposed by of the district court is

AFFIRMED.

---

[20]*Id.*