UNITED STATES of America,

v.

**Adam Slator BLACKISTON,
Defendant.**

**Criminal No. 2:06CR121.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 15, 2009.

---

Laura P. Taylor, Assistant United States Attorney, Newport News, VA, for Plaintiff.

Steven C. Frucci, Stallings & Bischoff, P.C., Virginia Beach, VA, for Defendant.

## ORDER

ROBERT G. DOUMAR, District Judge.

This case comes before the Court upon the plea of guilty by the Defendant Adam Slator Blackiston ("Defendant") to the charge of conspiracy to cultivate, possess, and distribute 100 or more marijuana plants and 100 or more kilograms of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). In accepting the Defendant's guilty plea, the Court scheduled sentencing. On January 12, 2009, the Court held a sentencing hearing. It came to the attention of the Court that the Defendant objected to the Pre–Sentence Report as issued by the United States Probation Office. In the Pre–Sentence Report, the Probation Officer recommended that the Defendant's sentence of imprisonment be enhanced due to his involvement with ecstasy. The Defendant contended, however, that enhancing his punishment for a narcotic not charged in this case violates extradition laws, including the Extradition Treaty between the United States and Costa Rica. The Government agreed with the Defendant and argued that the Defendant's sentence should not be enhanced due to his involvement with ecstasy. For the reasons set forth herein and at the hearing on January 12, 2009, the Court hereby **CONTINUES** the sentencing hearing until May 4, 2009 at 10 a.m., so that the Costa Rican government can be provided with the full opportunity to comment on the important questions of treaty interpretation that are squarely at issue before this Court.

On August 24, 2006, the Defendant was named in a Four–Count Indictment returned by the Eastern District of Virginia Grand Jury. On September 24, 2008, the Defendant pled guilty, pursuant to a written plea agreement, to Count One of the Four–Count Indictment. Count One charges the Defendant with conspiracy to

manufacture and cultivate 100 or more marijuana plants and possess with intent to distribute and distribute 100 kilograms or more of mixture or substance containing a detectable amount of marijuana.

From approximately 1993 until 2002, the Defendant and an indicted co-conspirator, Chauncey Ayers, collaborated to purchase and distribute large quantities of marijuana. The operation began in 1993, when the Defendant approached Ayers and offered to sell marijuana to him at a competitive price. Thereafter, Ayers purchased one-quarter pound of marijuana from the Defendant every three to four weeks for one and a half years. In 1995, Ayers began purchasing one pound quantities of marijuana from the Defendant every three months for about two years. In either 1998 or 1999, the Defendant began to use Ayers' residence to process and repackage large quantities of marijuana for distribution. Also during this time period, Ayers began purchasing two pound quantities of marijuana from the Defendant every six to seven months until Ayers' arrest in 2002.

From 2000 to 2001, the Defendant and others transported approximately 10,000 ecstasy pills from New York to Virginia. The Defendant sold 40 to 50 of these pills from his residence in Virginia Beach, Virginia. In June 2002, the Defendant and Ayers decided to start growing marijuana plants at Ayers' residence. On August 9, 2002, members of the Virginia Beach Police Department executed a search warrant on Ayers' residence. There, they discovered the grow operation, approximately 30 kilograms of marijuana, equipment, and various documents. In 2002, the Defendant moved to Costa Rica, and remained in Costa Rica until 2008 when he was extradited to the United States for the instant offense pursuant to the Extradition Treaty to which Costa Rica and the United States are signatories ("Extradition Treaty").

Prior to sentencing, the United States Probation Office issued a Pre–Sentence Report discussing the Probation Officer's sentencing recommendation to the Court. The Probation Officer recommended that, although the Defendant was indicted on charges alleging his involvement with marijuana, his sentence be enhanced under U.S.S.G. § 1B1.3 because his possession and distribution of ecstasy constituted "relevant conduct" for the purposes of sentencing. Thus, the Probation Officer recommended that the Defendant be sentenced within the Guideline range of 135 to 168 months. Without the enhancement, the Defendant's sentence would fall within the Guideline range of 60 to 71 months. Attributing the Defendant with the additional amount of drugs also has the effect of changing his minimum and maximum sentence under the statute: under the Probation Officer's calculation, the statutory minimum sentence would be 10 years and the maximum would be life imprisonment. 21 U.S.C. § 841(b)(1)(A). If the Defendant were not attributed with the additional drugs, the statute would dictate a minimum sentence of five (5) years and a maximum sentence of 40 years imprisonment. 21 U.S.C. § 841(b)(1)(B).

Because his plea agreement and statement of facts did not contain any mention of his role in the distribution or possession of ecstasy, and because he pled guilty and was extradited only for an offense involving marijuana, the Defendant argues that an enhancement under the Sentencing Guidelines due to his involvement in ecstasy would violate the Extradition Treaty. The Defendant argues that, under *United States v. Rauscher*, 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886), a defendant may not be prosecuted in a manner that is violative of an extradition treaty. Thus, "sentencing him under [an enhancement] pursuant to any alleged possession of ec-

stasy as described [in the Pre–Sentence Report] would be tantamount to punishing him and detaining him for the possession and/or trafficking of ecstasy" in violation of the language of the Extradition Treaty. (Def.'s Position on Sentencing at 2.)

The Extradition Treaty was signed by the Government of the United States and the Government of the Republic of Costa Rica on December 4, 1982, and entered into force on October 11, 1991. Article 16(1)(a) of the Extradition Treaty between the United States and the Republic of Costa Rica states that

> [a] person extradited under this Treaty may be detained, tried, or punished in the Requesting State only for: (1)[t]he offense for which extradition has been granted; (b) [a] lesser included offense; (3)[an] offense committed after the extradition; or (d) [any] offense for which the Requested State consents to the person's detention, trial, or punishment.

■ Extradition Treaty Between the Government of the United States of America and the Government of the Republic of Costa Rica, U.S.-Costa Rica, Dec. 4, 1982, T.I.A.S. No. 98–17, art. 16. This Court accepts the proposition announced in *Rauscher*, in which the Supreme Court stated that "a person who has been brought within the jurisdiction of the court by virtue of proceedings under an extradition treaty, can only be tried for one of the [offenses] described in that treaty, and for the [offense] with which he is charged in the proceedings for his extradition." 119 U.S. at 430, 7 S.Ct. 234. Often called the "doctrine of specialty," this principle is incorporated into the treaty between Costa Rica and the United States. Our inquiry, however, cannot end here. There remains a very important question that must be answered before the Court can determine the Defendant's sentence.

The Extradition Treaty's explicit use of the word "punishment" gives the Court pause. The Extradition Treaty appears to juxtapose this term with the terms "detained" and "tried." Thus, the main question before the Court is whether the Defendant is "punished" for a crime other than that for which he was extradited if his sentence is enhanced due to his possession and distribution of ecstasy, a drug with which he was not originally charged. Although it is well-accepted that the "use of evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within the authorized statutory limits does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause," *Witte v. United States*, 515 U.S. 389, 399, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), it remains unclear whether this concept applies in the international treaty setting. Specifically, the Court questions whether the *Witte* principle can be applied to the Extradition Treaty at issue here.

Although this Court finds no guidance in the law of this Circuit, it may look to the decisions of other circuits in pondering this question. Several circuits have, in fact, considered this very same issue in the context of treaties with other nations that utilize the same language. In *United States v. Lazarevich*, 147 F.3d 1061 (9th Cir.1998), the Ninth Circuit interpreted an extradition treaty with the Netherlands through the lens of *Witte* to hold that the treaty's requirement that a person not be "detained, tried or punished … for an offense other than that for which extradition has been granted" did not preclude the trial court from departing upwards in calculating the defendant's sentence where it was evident that the offense for which the defendant was extradited was committed to facilitate another offense. *Id.* at 1063–65.

In *Leighnor v. Turner*, 884 F.2d 385 (8th Cir.1989), the Eighth Circuit interpreted a German extradition treaty requiring that "[a] person who has been extradited under this Treaty shall not be proceeded against, sentenced or detained with a view to carrying out a sentence or detention order for any offense committed prior to his surrender other than that for which he was extradited." *Id.* at 388–89. The defendant was extradited from Germany on charges of fraud and for the purpose of serving the remainder of a sentence of imprisonment from which he had escaped. The Eighth Circuit found that the doctrine of specialty was not violated where the United States Parole Commission relied on the defendant's escape and use of a false passport to increase his parole guideline range.

The Sixth Circuit has similarly stated that a sentencing enhancement based upon a defendant's failure to appear at his arraignment "did not constitute 'punishment' for that conduct so as to violate any implicit proscription against such punishment in the extradition treaty." *United States v. Garrido–Santana*, 360 F.3d 565, 578–79 (6th Cir.2004). Finally, the Fifth Circuit recently relied on the above cases to hold that *Witte*'s definition of "punishment" applies to a Dutch extradition treaty whose language stated that a person extradited under the treaty "shall not be detained, tried, or punished in the territory of the Requesting State for an offense other than that for which extradition has been granted." *United States v. Angleton*, 201 Fed. Appx. 238, 243 (5th Cir.2006).

■ Despite the existence of this persuasive authority from other circuits, the Court remains reluctant to consider the question based solely on the information currently before it. In addition, it would be unwise to come to a hasty conclusion where the Court's interpretation of the language of the Extradition Treaty may have the effect of binding the Court or the Government of the United States under certain circumstances. The Court would like to hear the views of the government of the Republic of Costa Rica. Therefore, the Court solicits Costa Rica's interpretation of the word "punishment" as it is used in the Extradition Treaty. The Court also requests Costa Rica's advice as to whether the Extradition Treaty would be violated if the Defendant's sentence were enhanced due to his possession of ecstasy.

Therefore, the Court hereby **DIRECTS** the United States Attorney's office to forward a copy of this Order to the Costa Rican government for their consideration and in case they desire to comment or participate in this case. The Court also **DIRECTS** the Clerk to forward a copy of this Order to the Secretary of State of the United States for any comments the State Department wishes to make.

The parties in this case, the Republic of Costa Rica if it desires to participate, and the State Department if it chooses to comment, are **DIRECTED** to file pleadings addressing the Court's questions no later than April 30, 2009. The Court hereby **CONTINUES** the Defendant's sentencing hearing until May 4, 2009 at 10 a.m.

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**